IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| GARRY VINCENT LONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 12-2073-dkv |
| | ) |
| STRUMBONO, INC. D/B/A CORPORATE CARE, | ) |
| | ) |
| Defendant. | ) |

_____

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

In this personal injury case, the plaintiff, Garry Long ("Long"), slipped, fell, and was seriously injured on April 17, 2008, at the entrance to a break room inside his workplace, a Federal Express Corporation ("FedEx") training facility in Memphis, Tennessee. On December 29, 2011, he filed a complaint for damages against the defendant, Strumbono, Inc. d/b/a Corporate Care ("Corporate Care"), the company that provided carpet cleaning services to FedEx. (Compl., D.E. 1-1.) In the complaint, Long attributes the slippery condition that caused his fall to the negligence of Corporate Care, alleging that the fall occurred when he stepped onto the break room's linoleum floor immediately after traversing a strip of carpet that, unbeknownst to him, was still wet from a Corporate Care-performed carpet cleaning earlier that day. Now before the

court is the September 28, 2012 motion for summary judgment filed by Corporate Care. (Def.'s Mot. Summ. J., D.E. 35.) Long filed a response in opposition, (Pl.'s Resp. Opp'n to Summ. J., D.E. 38), and Corporate Care filed a reply. (Def.'s Reply, D.E. 42.) The parties have consented to the jurisdiction of the United States Magistrate Judge. For the reasons set forth below, Corporate Care's motion is denied.

## I. UNDISPUTED FACTS

The court finds that the following facts are undisputed for the purposes of this motion for summary judgment.

Corporate Care is an interior asset maintenance company that, at all times relevant to the complaint, performed carpet maintenance and cleaning for FedEx under a contract for same. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts, D.E. 38-9 at 2.) On April 17, 2008, Corporate Care, through its technician, Andra Dandridge ("Dandridge"), performed a low-moisture cleaning of the carpets at a FedEx Maintenance Technical Training Facility ("the facility" or "the subject facility") where Long worked. (*Id.* at 2-3; Compl., D.E. 1-1 ¶¶ 8-9; Answer to Compl., D.E. 4 ¶¶ 8-9.) This low-moisture cleaning, conducted monthly, involved the use and application of a liquid product to the carpets. (Def.'s Reply, D.E. 42 at 1.)

Dandridge's timesheet indicates that he started cleaning the carpets at the facility shortly after noon on April 17,

2008, and concluded by 4:00 that afternoon. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts, D.E. 38-9 at 3-4.) A section of carpet that Dandridge cleaned that day adjoins the linoleum flooring of an employee break room at the facility. (Compl., D.E. 1-1 ¶ 10; Answer to Compl., D.E. 4 ¶ 10.) At approximately 6:00 p.m. on April 17, 2008, Long, heading toward the break room, walked across the adjoining carpet and stepped onto the break room's linoleum floor, where he promptly fell backwards to the ground, his back and shoulders absorbing the fall. (Def.'s Reply, D.E. 42 at 1-2.) Prior to the fall, Long observed no caution signs or cones warning against a wet carpet or flooring. (*Id.* at 3; Pl.'s Resp. to Def.'s Statement of Undisputed Facts, D.E. 38-9 at 17.) After his fall, Long returned to the area where he had fallen and felt the carpet with his hands: he confirmed that the carpet around and immediately adjacent to the entrance to the break room was indeed wet. (Def.'s Reply, D.E. 42 at 2.) Long believes he fell because of the wet carpet. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts, D.E. 38-9 at 4.)

Corporate Care's Memphis branch trains its technicians to display plastic caution signs while performing cleaning services at any facility. (*Id.* at 8.) Also, because a facility's carpet may still be moist when Corporate Care technicians leave the facility after completing a cleaning job, (Def.'s Reply.

3

D.E. 42 at 3.), the technicians are trained to always leave behind cardboard, disposable caution signs that state "Caution, Wet Carpet." (Pl.'s Resp. to Def.'s Statement of Undisputed Facts, D.E. 38-9 at 8–9; Def.'s Reply, D.E. 42 at 4.) The technicians are advised to leave these disposable signs for reasons of "customer safety," but the contract between Corporate Care and Fed Ex does not actually require as much. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts, D.E. 38-9 at 17–18.) The disposable signs cost approximately $0.25 each. (Def.'s Reply, D.E. 42 at 4.)

Corporate Care acknowledges that it would be faulty and irresponsible not to leave behind the disposable caution signs after a cleaning, and, in particular, Corporate Care knows that if it fails to leave the disposable signs at transition points (i.e., "from soft to hard [flooring]"), a slip-and-fall accident might occur. (Def.'s Reply, D.E. 42 at 4–5.) Although Dandridge testified that it was his habit, custom, and routine to leave behind disposable caution signs after completing a carpet cleaning at the subject facility, he cannot recall whether he in fact did so on April 17, 2008, the date of Long's fall. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts, D.E. 38-9 at 14–15.)

Denise Miller, a FedEx employee who has worked as an Administrative Assistant at the subject facility for

4

approximately six years, conducts a routine walkthrough of the building at the end of her work shift each day, at approximately 4:15 p.m. Miller testified that, prior to Long's fall, she had never before seen a disposable wet floor caution sign at the facility after Corporate Care technicians had completed a cleaning. (Def.'s Reply, D.E. 42, at 8.)

The site of Long's fall was the entrance to a break room that contains soda machines as well as a few tables at which employees sit to eat meals and snacks and to drink beverages. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts, D.E. 38-9 at 6.) Throughout any given workday, any number of persons walks in and out of the break room, and sometimes they carry beverages out of the break room although they are not supposed to do so. (*Id.* at 5-6.) Long has no personal knowledge whether anyone spilled water or another liquid substance in the break room doorway or onto the adjacent carpet on April 17, 2008, prior to his alleged fall. (*Id.* at 6.)

## II. ANALYSIS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also LaPointe v. United Autoworkers Local 600*,

8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland Cnty Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case. *LaPointe*, 8 F.3d at 378. This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247—48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"

6

*Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251—52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378. Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

Long's negligence claim against Corporate Care is based on the following actions and omissions on the part of Corporate Care, which Long alleges caused his injuries: (1) creating a hazardous and dangerous condition; (2) failing to properly dry the subject carpet; (3) failing to train its employees to properly dry the carpet; (4) failing to prominently place caution signs to warn that the subject carpet was wet; and (5) failing to maintain a safe environment for persons who might

7

walk on the tile floor adjoining the carpet where the cleaning job was performed. (Compl., D.E. 1-1 ¶¶ 27-29, 31-32.) To prevail on his negligence claim, Long must prove each of the following elements: (1) a duty of care owed to him by Corporate Care; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996) (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)).

In moving for summary judgment, Corporate Care asserts that Long lacks evidence sufficient to support his claim. (Def.'s Mem. Supp. of Mot. for Summ. J., D.E. 35-6 at 3.) Specifically, Corporate Care asserts the following deficiencies: (1) that the undisputed factual circumstances do not give rise to any legal duty on the part of Corporate Care vis-à-vis Long's injuries; (2) that, even if the court finds that Corporate Care owed Long a duty, Long has not disclosed an expert to testify as to the applicable standard of care or how Corporate Care's actions fell below the standard; and (3) that Long cannot establish causation because there is no proof that Corporate Care's cleaning product was the origin of the alleged wetness upon which Long slipped. (*Id. passim*.) Corporate Care also argues that it complied with any general duty of reasonable care that it may have owed by leaving behind disposable caution signs

in the subject area after completing the cleaning job. (*Id.* at 10–11.)

A. <u>Duty of Care</u>

The requisite "duty of care" is a legal obligation owed by the defendant to the plaintiff to conform to a reasonable person standard of care for protection against unreasonable risks of harm. *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). Whether one party owes another a duty of care in a particular case is a question of law for the court's determination. *McClung*, 937 S.W.2d at 894. In deciding the question, the court must determine "whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993). Once the court determines the existence of a duty, it is for the trier of fact to decide the scope of that duty or the standard of care. *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990). This question of fact asks "what a defendant must do, or must not do[,] to satisfy the duty [of care]," *id.* (internal citation omitted), considering the foreseeability of harm, the gravity of the harm, and any commensurate burdens on the defendant, *McClung*, 937 S.W.2d at 902.

Corporate Care, citing to *Johnson v. EMPE, Inc.*, 837 S.W.2d 62 (Tenn. Ct. App. 1992), first argues that it owed no duty to

9

Long because it did not have "exclusive care, custody or control of the FedEx property or the area wherein Plaintiff reportedly fell." (Def.'s Mem. Supp. of Mot. for Summ. J., D.E. 35-6 at 6.) In *Johnson*, the plaintiff sought to hold the City of Bristol liable for her husband's death which occurred while he was employed by an independent contractor at a public sewer excavation site. The Tennessee Court of Appeals found the independent contractor in control of the premises, not the City, and found the contractor liable for its employee's injuries based on the general rule that one in control of premises must exercise reasonable care to avoid injury to persons lawfully on the premises. *See Johnson v. EMPE, Inc.*, 837 S.W.2d 62 (Tenn. Ct. App. 1992). Based on Johnson, Corporate Care argues that it did not have exclusive control of the premises at the time of Long's injury, and therefore it cannot be liable.

Tennessee law is clear, however, "[a] contractor, who performs work on premises to which the public is invited during the course of the work, is liable for injuries caused by his acts in rendering the premises unsafe and dangerous and negligently leaving them in that condition." *Broome v. Parkview, Inc.*, 359 S.W.2d 566 (Tenn. Ct. App. 1962). In *Broome*, the court held that a contractor who, in enlarging the alleys at a bowling center, had removed a portion of brick wall and covered it with an opaque plastic sheet, owed a duty to a bowling alley patron

10

who fell while attempting to lean against the wall. *Id.* at 568. Thus, Tennessee courts have imposed a duty of care on independent contractors, such as Corporate Care, even absent exclusive control over, or even presence on, the premises where the injury occurred if the contractor, through his actions, rendered the premises unsafe and left them in that condition.

This general rule applies even when the plaintiff is an employee or licensee of the entity that contracted for the services. In *Blair v. Durham*, 134 F.2d 729, 733 (6th Cir. 1943), a case cited by the *Broome* court, the Sixth Circuit applied Tennessee law and held that a contractor who had built a scaffold for repairs to a room in a government building owed a duty of care to a government employee who was injured when an object fell while the scaffold was being used by a subcontractor. In *East Tennessee Light & Power Co. v. Gose*, 130 S.W.2d 984, 988 (Tenn. Ct. App. 1939), another case cited by the *Broome* court, the Tennessee Court of Appeals held liable an electric company whose employees, after repairing machinery in the basement of a grocery store, left open a trap door in the middle of the grocery store; the injured party was not a patron of the store, but rather someone who had entered the store for the purpose of selling vegetables to the owner.

Thus, Corporate Care, having contracted to perform cleaning services on the subject premises owed a general duty of

reasonable care to protect persons who might reasonably be expected to be affected if the cleaning services were to leave the premises in an unsafe or dangerous condition. There can be no doubt that Long, as an employee at the facility, is someone who might reasonably be expected to be affected by the risk that Corporate Care itself had already foreseen: that an unwarned person walking across recently cleaned carpet onto hard flooring at the facility might slip and fall. (*See* Def.'s Reply, D.E. 42 at 4–5.) As such, Corporate Care owed Long a duty of care to refrain from negligently doing or failing to do any act which might bring about such an injury.

The scope of Corporate Care's duty to protect Long from this foreseeable risk, however, is a question of fact for the jury. It is for a jury to say whether Corporate Care, in the exercise of reasonable care, should have placed and ensured the continuing presence of caution signs in the subject area, whether it should have taken further steps to dry the carpet, or whether it should have trained its employees to take extra care with regard to adjacent non-carpeted surfaces.

Corporate Care characterizes Long's claim as an allegation that Corporate Care failed to meet some "heightened standard" of care and thus contends that Long's claim must fail because he has not disclosed an expert who will testify to this heightened standard. Indeed, Long's complaint alleges that Corporate Care

owed a "*heightened* duty to keep [the subject] area clean and safe and to warn of any potential dangers." (Compl., D.E. 1-1 ¶ 22, emphasis added.) However, in viewing the entirety of the complaint, the court interprets the phrase "heightened duty" to mean no more than the ordinary "reasonable person" standard of care applies in this case; the substance of Long's claim is akin to an ordinary negligence case rather than a case involving professional negligence.

Moreover, Corporate Care cites no legal authority in support of its position that expert testimony is required to determine the scope of its duty here. Instead, it merely points out that Long did not file an expert report. The court finds that there is sufficient evidence for a jury to comprehend the risks involved and the feasibility, costs, and usefulness of alternative, safer conduct and to "give meaning to the term 'reasonable care' under [the] particular circumstances" of this case. *See Usher v. Charles Blalock & Sons, Inc.*, 339 S.W.3d 45, 63 (Tenn. Ct. App. 2010)(determining that expert testimony was not required in a highway median construction case). As such, the absence of expert testimony will not prevent Long's claim from reaching the jury.

B. <u>Breach of Duty</u>

In its reply to Long's response in opposition to summary judgment, Corporate Care expressly concedes the existence of

disputed facts "with regard to whether [Corporate Care] left disposable caution signs on April 17, 2008." (Def.'s Reply, D.E. 42 at 12.) Corporate Care nonetheless contends that the issue of breach can be determined as a matter of law because the disputed facts are "not material." The court does not agree. Even if, as insisted, Corporate Care had no control over how long disposable caution signs would remain displayed after its technicians left the facility, a jury would still be permitted to find that Corporate Care's conduct in failing to leave the signs fell below the standard of care required under the circumstances. The element of breach therefore cannot be decided as a matter of law here and must be submitted to the jury for determination.

C. Causation

Corporate Care contends that summary judgment is appropriate because Long cannot establish the elements of legal and proximate causation as required for his negligence claim.

Corporate Care asserts that "any attempt [by Long] to argue that the carpets being cleaned caused [him] to fall must fail" because Long has presented no proof regarding the length of time the subject carpet was wet prior to Long's fall. (Def.'s Mem. Supp. of Mot. for Summ. J., D.E. 35-6 at 12.) Corporate Care cites to several Tennessee cases for the proposition that such proof is required. These cases, however, are not necessarily

14

applicable to the circumstances of the present case. The cases relied on by Corporate Care involved the imposition of liability on a premises *owner* predicated on the owner's constructive notice of a dangerous condition. As Corporate Care is not the premises owner here nor is this a case of constructive notice, Long is not required to submit proof of how long the subject flooring existed in a dangerous condition prior to his fall.

Corporate Care also contends that "settled case law" in Tennessee justifies the grant of summary judgment on the issue of causation here. However, it cites to only one case in support. (Def.'s Mem. Supp. of Mot. for Summ. J., D.E. 35-6 at 14.) Corporate Care insists that *Chambliss v. Shoney's, Inc.*, 742 S.W.2d 271 (Tenn. Ct. App. 1987), also a slip-and-fall case, supports its position because, in that case, the lack of proof as to when and how a pool of water had reached the bathroom floor of the defendant's restaurant precluded the plaintiff's recovery.[1] In Chambliss, the plaintiff theorized that the water was tracked into a restroom in the restaurant from snow and slush outside the restaurant but the court found no proof of "tracking" in points in between the restroom and the outside

---

[1] *Chambliss* was a case decided on directed verdict. Interestingly, Corporate Care, elsewhere in its motion pleadings, itself argues that certain case law cited by Long is inapplicable because it deals with Tennessee's directed verdict standard, which "is not the same standard governing summary judgment in federal court." (*See* Def.'s Reply, D.E. 42 at 18.)

15

door. According to Corporate Care, Long's proof is similarly lacking as to the source of the wetness. However, here again, to the extent Corporate Care attempts to hold Long to a specific proof requirement of when the carpet became wet, that requirement is only applicable in premises liability cases based on owner's constructive notice, and this is not a constructive notice case. Long need not prove *when* the dangerous condition was created because Long has not based her claim for negligence on the fact that Corporate Care should have discovered the existence of a dangerous condition. Rather, the allegation is that Corporate Care itself created the dangerous condition.

However, Corporate is correct that, to withstand summary judgment, Long must come forward with some proof of the source of the moisture that caused him to slip and fall. Long has admitted that he does not have any *direct* knowledge of how the subject carpet became wet. (Long Depo. 62:3–10.) Nonetheless, circumstantial evidence can suffice to create a genuine issue of material fact on the issue of causation here. To avoid summary judgment, "there must be evidence on which the jury could reasonably find for the [nonmovant]," *Anderson*, 477 U.S. at 252; a jury is permitted to draw inferences from circumstantial evidence in deciding ultimate facts. *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985). Thus, Long can bring his case before a jury on circumstantial evidence

alone so long as the jury could reasonably infer from such evidence that Corporate Care's negligence caused Long's injuries.

While a jury is not permitted to speculate or engage in guesswork regarding two equally probable inferences, it is sufficient for the plaintiff "to make out the more probable hypothesis." *Benson*, 699 S.W.2d at 563. To avoid summary judgment, the plaintiff is not required to produce evidence that excludes every other reasonable conclusion. *Id.* Unlike in *Chambliss* where the "uncontradicted evidence" rendered the plaintiff's theory of causation a mere "remote possibility," there is considerable evidence here from which a jury could fairly infer that Long's theory is more probable than any other as to the source of the moisture that caused his fall. There is the fact that Corporate Care itself foresaw the possible occurrence of the exact injury that Long suffered, (*see* Lacy depo. 30:22-31:2; Dandridge depo. 116:6–11); the fact that Corporate Care admits that sometimes the carpets remain moist after a cleaning job is completed; the fact that, just minutes after his fall, Long felt around and confirmed the wet condition of the floor in the area of his fall; and the fact that other employees claim to have previously slipped and nearly fallen in the subject area because of residual wetness from a Corporate

Care-performed carpet cleaning, (*see* Simmons depo. 10:8-10, 38:11-21; Malone depo. 28:2-8).

There is conflicting evidence concerning how long it takes for a carpeted area to completely dry after a low-moisture cleaning of the type performed on the day in question.  A jury would be entitled to determine this and other disputed facts in the case, to consider the various inferences that could be drawn from all of the evidence, and to reasonably decide which of the possible inferences is the most probable.  Long has presented an issue of fact on which reasonable jurors could differ as to whether Long's fall was the result of Corporate Care's negligence.  The question of causation is thus for the jury to decide.

### III.  CONCLUSION

For the foregoing reasons, Corporate Care's motion for summary judgment is denied.

IT IS SO ORDERED this 28th day of December, 2012.

s/Diane K. Vescovo
Diane K. Vescovo
United States Magistrate Judge